HERBERT H. DANIEL, *ET AL.*, PLAINTIFFS-APPELLANTS, v. THE BOROUGH OF OAKLAND, DEFENDANT-RE-SPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 2, 1973—Decided May 10, 1973.

Before Judges LEWIS, CARTON and MINTZ.

*Mr. Kent A. Losche* argued the cause for appellants (*Messrs. Losche & Losche,* attorneys).

*Mr. William DeLorenzo, Jr.* argued the cause for respondent.

The opinion of the court was delivered by

CARTON, J. A. D. The narrow issue posed on this appeal is whether a municipality has the power to increase water rates retroactively.

The mayor and council of defendant Borough of Oakland in 1967 adopted an ordinance creating a water department, which it charged with responsibility for the operation of its municipal water supply system. This ordinance, adopted pursuant to *N. J. S. A.* 40:62–47 *et seq.,* provided for the sale of water to persons within and outside the borough on conditions and according to a schedule of fees set forth in the ordinance.

There was an increase in the cost of operation of the water utility during the early part of 1970, accompanied by a decrease in the estimated income for prior years, and, as a result of various public meetings, it became evident to the borough officials that the rates would have to be increased. The borough attorney was authorized in April to prepare an amendatory ordinance for introduction to raise the rates as of July 1. Nevertheless, the mayor and council delayed introduction of the ordinance in the hope that increased use of

lawn sprinklers during the hot summer months might bring in revenue and thus negate the necessity for any rate increase. The anticipated increase in revenues failed to materialize, however, and in September 1970 the ordinance here challenged was adopted increasing the water charges retroactively to cover the period beginning July 1.

Plaintiffs, for themselves and as representatives of all consumers of water in the borough, brought this action to declare the ordinance illegal. It was undisputed that plaintiffs were residents and purchasers of water at all times pertinent to this case. It was also stipulated that there were some residents of the town after the ordinance was adopted who had not resided there previously, and that premises of those residents could be affected by liens for unpaid water charges.

Plaintiffs moved for a partial summary judgment. However, the court, 119 *N. J. Super.* 235, holding that the retroactive provision of the ordinance did not constitute an impairment of contractual obligation, upheld the validity of the ordinance and granted summary judgment in favor of defendant municipality. We believe this determination to be erroneous and that the ordinance, insofar as it mandated retroactive operation, was invalid. In other respects the validity of the ordinance is not here involved.

When the borough adopted the original ordinance in 1967 creating a water department and providing for the sale and distribution of water to its inhabitants for domestic and commercial use, it established the machinery for engaging in a private or proprietary function. *Reid Development Corp. v. Parsippany-Troy Hills Tp.,* 10 *N. J.* 229 (1952). The business nature of this function differed in no substantial degree from similar functions carried on by public utilities.

Charges by a municipality for water furnished to its customers involve a sale and arise from a contractual relationship between it and the customer. As the court stated in *Lehigh Valley R. R. Co. v. Jersey City,* 103 *N. J. L.* 574, 576 (Sup. Ct. 1927), aff'd 104 *N. J. L.* 437 (E. & A. 1927) :

Our conclusion is that a charge for water furnished by a municipality to an owner or occupant of lands is not a tax, but is the subject of a contract, the sale of a commodity, creating the relationship of seller and purchaser as between the municipality and the consumer. * * *

See also *Ford Motor Co. v. Kearny*, 91 *N. J. L.* 671, 672 (E. & A. 1917).

In the present case the ordinance itself uses the language of contract. It refers to the "sale" of water to its customers. It requires the customer requesting service to make a written application for such service and to enter into an agreement for its continuance. It describes that agreement as a "contract." The conclusion that a contractual relationship existed between the borough and its customers is inescapable.

■ Such contract, as other contracts, was entitled to the protection provided by the Federal Constitution and the State Constitution. Both prohibit the adoption of any law impairing the obligation of contract. *U. S. Const.*, Art. I, § 10; *N. J. Const.* (1947), Art. IV, § VII, par. 3.

We note that it is not the retroactive aspect itself which renders the ordinance vulnerable to attack. That vulnerability arises because of the existence of the constitutional prohibitions against impairment of contract, which here result from the operation of the retroactive provision contained in the ordinance. As *Sutherland* points out:

Aside from the suspicion with which all retroactive operation is regarded, there are no limitations on retroactive laws other than the constitutional limitations which affect all legislation. [2 *Sutherland, Statutory Construction* (3d ed. 1943), § 2201 at 116]

■ There is nothing in our law, decisional or statutory, which supports the argument that the constitutional proscription against impairment of contract is not applicable to laws relating to agreements of sale to furnish water.

"The powers of a New Jersey municipality are wholly derivative from state statute." *West Point Island Civic Ass'n v. Tp. Comm. of Dover Tp.*, 54 *N. J.* 339, 345 (1969).

The source of power enabling defendant borough to sell water is *N. J. S. A.* 40:62–47. Section 47 confers upon the governing body the general power to "adopt all ordinances and resolutions [and to] enter into all agreements and contracts, and [to] do all other acts necessary to provide water for the public and private uses of the municipality and its inhabitants * * *," in accordance with the provisions of the following sections of that title.

Section 77 authorizes the governing body to fix and collect water rents or prices for water and to impose penalties in addition to cutting off water for nonpayment thereof.

The statute does not purport to confer power to impose retroactive water rates, and it cannot be implied.

Speaking of a similar situation in *Federal Shipbuilding &c. Co. v. Bayonne,* 102 *N. J. Eq.* 475 (Ch. 1928), aff'd 104 *N. J. Eq.* 196 (E. & A. 1928), the court said:

The last quoted provision of the Home Rule act [*N. J. S. A.* 40:62–77] grants no power to Bayonne to make retroactive water rates, but only the power to fix and collect the water rents, and prices established in advance for the service to be rendered * * * [102 N. J. Eq. at 480]

We do not consider that the precedential effect of *Federal Shipbuilding, &c. Co. v. Bayonne* has been weakened or spent because of the adoption of the 1947 New Jersey Constitution. True, the new Constitution directs that laws concerning municipalities be liberally construed in their favor. True, also, that neither the United States Constitution nor the New Jersey Constitution in so many words prohibits the enactment of all retroactive legislation. But neither the mandate regarding liberality of interpretation nor the silence of the Constitutions as to the power to enact retroactive laws can properly be interpreted to authorize retroactive laws *impairing the obligation of contract.* The constitutional imperative against impairment of contracts remains in full force.

 The challenged ordinance does alter contracts. By virtue of the provision making the rates retroactive, water already purchased and used at a clearly stated and fixed price became more expensive to the consumer. Furthermore, the additional price of water already purchased and consumed became attended with all the penalties fixed by the ordinance, including payment of interest on charges not paid within thirty days and discontinuance of service for unpaid arrearages.

 It is not controlling that the period during which the retroactive charge was imposed was of relatively brief duration. The record indicates that about $4,000 in monies is involved. Such an infringement of contractual rights cannot be deemed *de minimis* even though the increased cost to each of the individual consumers is small. What was said in *Kilpatrick v. Lefkowitz*, 141 *N. J. Eq.* 18 (Ch. 1947), quoting *Baldwin v. Flagg*, 43 *N. J. L.* 495 (Sup. Ct. 1881) (at page 503) is apposite:

* * * It is perfectly clear that any law which enlarges, abridges, or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it, and the manner and degree in which this change is effected can in no respect influence the conclusion. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are part of the contract, however minute or apparently immaterial in their effect upon it, impairs its obligation. * * *

Determination that the retroactive provision of the ordinance is illegal (other aspects of the ordinance are not involved) will require the return of the monies unlawfully exacted or the crediting of such sums on the bills of consumers who remain residents of the community. But this presents no insuperable obstacle. Similar remedial action is commonly required in rate proceedings of ordinary public utilities.

It may also be, as defendant-municipality argues, that the invalidation of the retroactive provision of the ordinance

may entail adjustments in the municipal budget or the adoption of other financing procedures, or both. However, defendant-municipality is in no position to complain, for its predicament is the result of its own failure to take timely and routine necessary measures to provide the revenues that the municipal officials were fully cognizant were needed for the operation of the water utility. Irrespective of their motivation, reliance on future favorable weather conditions which might make a rate increase unnecessary is hardly a valid reason for a knowing refusal to adopt the ordinance which would have avoided this situation.

Reversed. No fees or costs.